IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                         No. 16 CR 3212 WPJ

JULIAN BROWN,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR DISCLOSURE REGARDING CONFIDENTIAL INFORMANT**

**THIS MATTER** comes before the Court on Defendant Julian Brown's Motion for Disclosure Regarding Confidential Informant (**Doc. 20**) filed on October 21, 2016. Having considered the parties' written and oral arguments, the testimony and evidence presented at the hearing on January 6, 2017, and the applicable law, the Court finds that Defendant's Motion is not well-taken and, therefore, is **DENIED.**

BACKGROUND

Mr. Brown is charged by indictment with distributing heroin and selling a short barreled shotgun to an undercover Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATF") agent on July 11, 2016 in Albuquerque, New Mexico.[1] Defendant states he was introduced to the undercover agent by a confidential informant ("CI") identified in discovery as "ATF Confidential Informant (CI) 11438." The CI allegedly recruited Mr. Brown to engage in illegal transactions by selling him a carton of cigarettes at a greatly reduced price. The CI was present at the transactions alleged in the Indictment. As such, Defendant contends the CI is a percipient

---

[1] A federal grand jury returned a two-count indictment on July 28, 2016, charging Defendant with violations of: (1) 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), that being distribution of heroin; and (2) 26 U.S.C. §§ 5861(d), 5841, and 5871, that being possession of an unregistered firearm. *See* Doc. 2.

witness to and a participant in the events set out in the Indictment.  At the time of the arrest, Mr. Brown was working at a stucco company and supporting his fiancée and infant daughter.

Defendant filed a Motion for Disclosure Regarding Confidential Informant (Doc. 20) on October 21, 2016.  The United States filed a Response (Doc. 21) on November 7, 2016.  Defendant filed a Reply (Doc. 23) on November 28, 2016.

## DISCUSSION

As an initial matter, the Court agrees with the argument advanced at the hearing by Assistant U.S. Attorney Norman Cairns that if Mr. Brown is arguing or asserting an entrapment defense, whether Mr. Brown was entrapped is for the jury to decide and the jury would be so instructed.  Moreover, Mr. Cairns represented that the United States would produce the CI to testify at trial.  In view of the representations made by Mr. Cairns, the focus then of Mr. Brown's motion can only concern the question of whether the Court should order disclosure of the CI at this time for purposes of determining whether Defendant should file a motion to dismiss the conduct on allegedly outrageous conduct by government agents.

Mr. Brown argues disclosure of the CI's identity, of his statements to law enforcement, of his background, and production of the CI for a statement are relevant and helpful to Mr. Brown's defense. Mr. Brown seeks the disclosure under *Roviaro v. United States*, 353 U.S. 53, 61–62 (1957).  Mr. Brown states he *may* rely on the defense of outrageous misconduct. Testimony of the CI is essential to this defense because the CI was a percipient witness to and a participant in the alleged negotiations which resulted in Defendant's alleged participation in this transaction. The CI may be able to provide evidence of inducements or threats which caused the defendant's participation. The CI may also be able to provide testimony relevant to reluctance to participate on the part of the defendant. The defendant's right to prepare and present his defense outweighs

the public interest in protecting the flow of information to the government in this case. *See id.* at 62. At the hearing, Defendant's counsel explained this is not a case where Defendant was targeted because he was involved in illegal activity, but rather is a situation where the CI basically induced Mr. Brown to engage in the activities set out in the Indictment.

Further, Defendant maintains that calling the CI as a witness, or at least interviewing him in preparation for trial, is a matter for the accused rather than the government to decide. *Id.* at 64. Defendant states he has been unable to locate or identify the CI, and requests this Court to order the government to disclose the name and address of the informant and to produce him for a statement at least fourteen days prior to trial. Defendant states the Court must balance the government's privilege against disclosing informants with Mr. Brown's constitutional right to present a defense, and the balancing of interests here weighs most heavily for Mr. Brown. Defendant states there is no disincentive for the flow of information because the CI here is not a mere tipster but is rather a paid employee of BATF.

Mr. Brown also requests the Court order the government to disclose any and all evidence relating to the bias or credibility of the CI. He claims such disclosure is constitutionally required. *See Giglio v. U.S.*, 405 U.S. 150 (1972). Defendant claims disclosure of impeachment evidence is required under *Brady v. Maryland*, 373 U.S. 83 (1963); and *U.S. v. Bagley*, 473 U.S. 667 (1985).

In the Response, the United States contends the motion should be denied because Defendant fails to explain how the identity of the CI would be essential to his defense. The government asks the Court to hold an *in camera* hearing to determine the additional requisite facts needed to evaluate Defendant's request (if the Court cannot decide the motion presently).[2]

---

[2] Defendant did not disagree with the government's request for an *in camera* hearing in the event the Court felt it could not evaluate the Defendant's motion without hearing additional testimony.

The United States points out that *in camera* hearings are accepted procedures in the Tenth Circuit when evaluating whether to disclose an informant. *See Gaines v. Hess*, 662 F.2d 1364, 1369 (10th Cir. 1981).

The government's principal argument is that Mr. Brown has not shown the identity of the CI would materially aid his defense, as he is required to do. *See Rovario*, 353 U.S. at 60–61 (Only "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause" may a trial court require that the identity of a CI be disclosed.). The government also correctly notes there is no fixed rule requiring disclosure of the CI's identity. Rather, it is a balancing inquiry and courts must consider the particular circumstances of the case. *See United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997). The government emphasizes that "[w]here it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure." *Id.* Importantly, a defendant seeking to force the disclosure of a CI's identity bears the burden of demonstrating that the CI's "testimony is relevant or essential to the fair determination of defendant's case." *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999). Here, the government argues, Defendant states only that he "may" rely on the defense of outrageous misconduct or entrapment, that the CI "may" provide evidence of inducements or threats, and "maybe" able to give relevant testimony regarding Mr. Brown's reluctance to participate in the illegal exchange. The government properly notes these vague conjectures are not alone sufficient to meet Defendant's considerable burden under *Rovario*. Defendant must show the CI has information that: (1) somehow materially aids Defendant; (2) is not in the possession of Defendant or the undercover agent or any other federal agent involved here; and (3) is so critical

that it outweighs the "strong public interest in furthering effective law enforcement." *United States v. Brantley*, 986 F.2d 379, 382 (10th Cir. 1993).

Lastly, although the government's Response initially stated Defendant's *Giglio* discovery request should be denied because the government does not plan on calling the CI as a witness should this matter go to trial[3], counsel for the United States represented at the hearing that it would be producing the CI for purposes of the trial. Government counsel stated the United States plans to discover any exculpatory and/or impeachment evidence in advance of trial, and turn it over to defense counsel in the event such evidence is material. However, the United States maintained its position that Defendant has no basis upon which to cross-examine the CI in advance of trial.

In replying, Defendant claims BATF agents paid cash to CIs, like the CI in this case, "to troll unsupervised for individuals who might be induced to engage in legal or illegal firearms and narcotics transactions in exchange for more cash." Defendant states that at the time, he was supporting his fiancée and their infant. Mr. Brown's criminal background consists only of juvenile offenses and misdemeanors. Defendant claims he told the undercover BATF agent and/or the CI that he did not have drugs but he knew where to find them. Agents encouraged Mr. Brown to go out and find contraband, to commit a crime by obtaining and selling the contraband to them, and offered to pay him cash if he would do so. The CI was not a mere tipster and was a paid government participant who groomed Mr. Brown to commit the crimes alleged in the Indictment.

---

[3] *See United States v. Green*, 178 F.3d 1099, 1109 (10th Cir. 1999) ("[B]ecause both the discovery order and *Giglio* apply only to impeachment information relating to a government witness, . . . they are inapplicable because the government did not ever call [the CI] as a witness.").

Mr. Brown argues disclosure of the CI is warranted here because, first, it is his decision whether to call the CI as a witness. *See Roviaro*, 353 U.S. at 64. Defendant maintains that the fact that the government paid a CI to induce people to commit crimes may give rise to a motion to dismiss, disclosure is warranted. Moreover, that paid CIs "targeted random, indigent people not otherwise engaged in criminal activity similarly may assist the defense."

The Court will not order disclosure of the CI because Defendant has not carried his substantial burden of establishing that his need for the disclosure outweighs the public interest in protecting the CI's identity and in keeping certain operations confidential. In *Roviaro*, the Supreme Court explained, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 53 U.S. at 60. A party seeking disclosure of the identity of a confidential informant has the burden of demonstrating a need for disclosure. *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992). To determine the privilege's applicability, the Supreme Court has set forth a balancing test whereby the public's interest in protecting the flow of information and the personal safety of the informant is weighed against the individual's need for the informant's identity. *Roviaro*, 353 U.S. at 62. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62; *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987).

Ultimately, the Court's task is to balance the "public interest in protecting the flow of information against the individual's right to prepare his [cause]." *Roviaro*, 353 U.S. at 63. The

Court agrees with the United States that Defendant has not carried his heavy burden in establishing his need for the information regarding the CI outweighs the public interest in protecting the CI's identity. At this point, it remains speculative whether the CI possesses information critical to Mr. Brown's defense. The Court concludes there must be more than the proffer of counsel on whether the CI's testimony would support the defense of outrageous government conduct, which is the only defense to which the information could presently relate.[4] Defendant has not shown, nor has he outright, that Defendant had no inclination to engage in criminal activity. Although Defendant's counsel did argue that Mr. Brown was "minding his own business and was not engaged in any illegal activity" until the CI "got him to" engage in the activity in the Indictment, the arguments of counsel are not evidence and do not meet the burden under *Roviaro*. Defendant has presented no evidence, no affidavits or otherwise, that the government was excessively involved in the creation of the crime nor has he presented any showing of significant governmental coercion to induce the crime. *See United States v. Dyke*, 718 F.3d 1282, 1288 (10th Cir. 2013) (quoting *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994) ("As articulated by this circuit, a defendant asserting the outrageous governmental conduct defense bears the burden of proving either '(1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime.'")).[5] The Tenth Circuit clearly holds that "mere speculation" is not enough when considering whether to order disclosure of an informant. Rather, the "CI's testimony must be

---

[4] At the hearing, counsel for both parties agrees that the defense of entrapment does not arise until trial and is a matter for the jury to decide. *See United States v. Yarbrough*, 527 F.3d 1092, 1099 (10th Cir. 2008) ("It places in the hands of the jury the question of whether the criminal intent originated with the defendant or with the government."). Thus, it would be premature for the Court to order disclosure of the CI at this stage with regards to the defense of entrapment.

[5] Indeed, the burden of establishing outrageous government conduct is exceedingly high. The Tenth Circuit has held the "government is free 'to infiltrate an ongoing criminal enterprise,' and 'to induce a defendant to repeat or continue a crime or even to induce him to expand or extend previous criminal activity.'" *United States v. Dyke*, 718 F.3d 1282, 1288 (10th Cir. 2013) (quoting *United States v. Mosley*, 965 F.2d 906, 911 (10th Cir. 1992)).

*shown* to be valuable to a defendant." *United States v. Leahy*, 47 F.3d 396, 398 (10th Cir. 1995) (emphasis added). Defendant seems to be saying that because there is information he does not know, and wants to know (such as the contents of certain recordings that he claims would show "grooming or recruitment"), the Court should order the information disclosed under *Roviaro*. The Court does not agree with this reasoning and accordingly denies the Motion.

Indeed, other than the arguments of counsel, Defendant has made no showing that the CI's "testimony is relevant or essential to the fair determination of defendant's case." *Gordon*, 173 F.3d at 767. As the government argues, Defendant states only that he "may" rely on the defense of outrageous misconduct or entrapment, that the CI "may" provide evidence of inducements or threats, and "maybe" able to give relevant testimony regarding Mr. Brown's reluctance to participate in the illegal exchange. The government properly notes these vague conjectures are not alone sufficient to meet Defendant's considerable burden under *Rovario*. Defendant's mere suggestion of a possible defense, without concrete evidence, does not require the government to disclose the identity of its CI, particularly where, as here, Defendant's motion is bereft of any specific reasons a defense of outrageous government conduct may be warranted. Indeed, this is the exact type of "mere speculation about the usefulness of an informant's testimony" that the Tenth Circuit has found to be insufficient to warrant disclosure. *Brantley*, 986 F.2d at 383.

The Court takes a moment to consider two cases Defendant relied upon in the Motion and at the hearing as providing support for his argument, but those cases are readily distinguishable and inapposite. Defendant cites *Leahy*, 47 F.3d at 398, and *United States v. Muse*, 708 F.2d 513 (10th Cir. 1983), for the proposition that because Defendant cannot locate or identify the CI, the Court should order the government to disclose the CI. In Leahy the Tenth Circuit held

"defendant established no imperative for revealing the CI's identity.  Defendant's right to due process and a fair trial was not impaired by the district court's protection of the CI's identity."  47 F.3d at 399.  There, the court explained that the "defendant failed altogether to establish how the identity of the informant might contribute meaningfully to his defense."  *Id.* at 398.  This was in light of the defendant's contention that he needed to know the CI's identity so that he could question the CI about whether an officer sought an overly broad search warrant.  *See Id.*  Moreover, in *Muse*, the Tenth Circuit simply held the defendant was not denied a fair trial due to the government's failure to produce a CI.  *See* 708 F.2d at 515.  These cases do not lend the support to Defendant's position that he so wishes.

The Court also denies the Motion to the extent Defendant is seeking evidence relating to the bias or credibility of the CI.  The government indicated at the hearing that it plans to call the CI for trial purposes.  However, this alone does not require the blanket disclosure Defendant asks for under *Giglio*.  In *Giglio* the Supreme Court extended the government's duty to disclose exculpatory evidence to evidence that will aid the defense in impeaching government witnesses.  The Court held, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule."  *Giglio*, 405 U.S. at 154 (internal quotation marks and citation omitted).  In *Giglio*, the government's entire case depended on the third party's testimony, and without it there could be no indictment.  *Id.*  The third party's credibility was thus critical, so the Court held the jury was entitled to hear evidence relevant to the party's credibility.  *Id.* at 155.  As this Court has explained above, Defendant has made no articulate showing or specific identification of any information that might be material to the CI's credibility.  If there is specific exculpatory information that Mr. Brown believes exists, he may ask the Court for its disclosure.  But *Giglio* does not authorize a

blanket disclosure of the CI's identity merely because Defendant's counsel asks for such a disclosure.  *United States v. Ashley*, 274 Fed.Appx. 693, 697 (10th Cir. 2008) ("[T]he Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information.").  However, as Mr. Cairns agreed at the hearing, if the government uncovers any exculpatory and/or impeachment material, it must produce such material evidence in time for its use at trial.  *Id.* at 154–55; *Brady v. Maryland*, 373 U.S. 83, 93 (1963) ("prosecutors must disclose all favorable material evidence to the defense").

Thus, the Court need not hold an *in camera* hearing to elicit testimony from the CI.  Accordingly, for the reasons set forth in this Memorandum Opinion and Order, Defendant's Motion for Disclosure Regarding Confidential Informant (**Doc. 20**) is **DENIED**.

**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE